UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHENITTA CARTER,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

_____/

Case No. 20-11833

Hon. George Caram Steeh

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 18)

Defendant, the United States of America, moves for summary judgment on Plaintiff's claim under the Federal Tort Claims Act. Plaintiff seeks to recover non-economic damages for injuries she alleges she sustained in a motor vehicle accident. To do so, Plaintiff must establish that her impairments are causally related to the accident. Because she has failed to raise an issue of fact in this regard, the court will grant Defendant's motion.

BACKGROUND FACTS

Plaintiff Chenitta Carter was in an automobile accident with a federal employee on January 30, 2019. Carter is the owner of Remarkable Transportation LLC, a company that transports patients to medical

-1-

appointments. On the day of the accident, Carter was driving a transport van with two passengers. One of the passengers, Tina Norton, was in a wheelchair. Norton reported that she was not strapped in properly and that her wheelchair was moving. Carter pulled the van over to the side of the road, activated her hazard lights, and climbed into the back of the van to assist Norton.

Meanwhile, Robert Dillon was driving a vehicle owned by the U.S. Department of Veteran's Affairs. Carter's van was stopped in the lane ahead of him. Dillon attempted to avoid the van, but he lost control of his vehicle due to icy road conditions. His car hit the left rear corner of Carter's van. At the time, Carter was in the back of the van, adjusting Norton's wheelchair. The impact caused her to fall.

Carter exited the van, inspected it for damage, and asked if Dillon was okay. Subsequently, she went to the emergency room at Beaumont Hospital in Grosse Pointe, complaining of pain on the left side of her head, left chest cavity, left hand, and left side of her abdomen. ECF No. 18-10. A CT scan was performed on her head and neck, chest, abdomen and pelvis. *Id.* These scans were "negative for acute findings." *Id.* She was diagnosed with a "chest wall contusion" and "closed head injury without LOC [loss of consciousness]." *Id.* Carter was given prescriptions for Motrin and Flexeril

(a muscle relaxant) and was advised to follow up with her primary care physician. *Id.*

Carter was seen for a follow-up visit on February 5, 2019. The provider's notes indicate that Carter "went back to work the following day without issues but began to experience pain in her shoulder and lower back about three days after the event." ECF No. 18-12. The doctor recommended "continuing conservative management with ibuprofen when necessary" and physical therapy. *Id.* She "provided a work excuse for 1 week and recommend follow up to reassess pain." *Id.*

Carter was seen at her doctor's office again on February 14, 2019, complaining of left-sided neck and chest pain. ECF No. 19-1 at PageID 464. She was advised to follow up with physical therapy.

On February 22, 2019, Carter and her husband were stopped by the police for possessing drugs, and she spent the next two days in jail.[1] Relevant to this case, Carter testified that at the time of her arrest, she "was mobile" and could "walk," "run," and do "exercises." ECF No. 18-4 at PageID 175. She stated that she was "very active" and "had no problems at all." *Id.*

---

[1] Subsequently, in April 2019, Plaintiff was charged with disposition of a firearm to a felon in violation of 18 U.S.C. § 922(d). She was sentenced to two years of probation with a six-month period of home confinement by Judge Lawson. Case No. 19-20195.

Carter visited an orthopedic specialist on April 5, 2019, complaining of pain in her neck, back, left arm, and left leg. The doctor ordered tests, including an MRI and EMGs, and stated that "we will begin her on a course of physical therapy for her neck and back." ECF No. 19-1 at PageID 468-69. An MRI dated April 8, 2019, revealed "multiple level disc bulges" and "involvement of the spinal cord at multiple levels with compression." *Id.* at PageID 470. In addition, "disc herniations are noted." *Id.*

Carter again visited a specialist for her shoulder pain on April 19, 2019, who recommended an MRI for her left shoulder. *Id.* at PageID 471-72. The imaging report conclusions were "minimal infraspinatus [rotator cuff] tendinosis," "minimal subacromial subdeltoid bursitis," and "mild to moderate AC joint osteoarthritis." *Id.* at PageID 485.

Carter was seen for a neurological exam on April 30, 2019, with various complaints, including clumsiness, numbness, loss of balance, ringing in her ears, and memory problems. ECF No. 19-1 at PageID 477-79. The doctor recommended a brain MRI and neuropsychologic testing.

On May 1, 2019, Carter suffered a stroke. She was lying in bed that morning and was unable to speak or stand, causing her husband to call 911. She was transported to the hospital in an ambulance and presented

with left-sided weakness, left-sided facial droop, and slurred speech. Carter received extensive inpatient rehabilitation following her stroke.

Based upon her stroke, as well as "acid reflux," Carter applied for social security disability benefits, identifying a disability onset date of May 1, 2019. She continues to have mobility and speech difficulties and cannot use her left arm. Her husband, Rodney Carter, testified that the stroke limited Carter's ability to use her arm and leg and to do her normal activities. ECF No. 18-7 at PageID 207-209. He did not believe Carter's activities were limited by her injuries from the car accident. *Id.* Carter admitted that she could do activities – such as riding a motorcycle, swimming, cooking, exercising, and bowling – following the accident and before her stroke, although she provided inconsistent testimony in this regard. ECF No. 18-4 at PageID 168-81, 186.

Carter has since undergone four independent medical examinations. Dr. John Anderson, a board-certified specialist in orthopedics, conducted an IME on April 9, 2021. ECF No. 18-18. Dr. Anderson concluded that Carter had "cervical degenerative arthritis and cervical disc disease with resultant left shoulder pain" as well as "lumbar degenerative arthritis and lumbar degenerative disc disease." *Id.* at PageID 288. He opined that these are "pre-existing" disorders "with no causation and no aggravation

regarding her motor vehicle collision." *Id.* "At most, [Carter] had a cervical strain and left shoulder contusion" which should have resolved within four weeks. *Id.* "Any complaints after a period of four weeks would be related to her pre-existing degenerative conditions." *Id.* at PageID 289.

Dr. Saad Naaman, who is board certified in physical medicine and rehabilitation, as well as brain injury medicine, conducted an IME of Carter on April 6, 2021. Dr. Naaman opined that Carter may have had sprains or strains from the accident, but those should have resolved "a maximum of 6-8 weeks after the accident." ECF No. 18-19 at PageID 302. He further concluded that there was no correlation or relationship between Carter's automobile accident and her stroke. *Id.*

Dr. Peter Grain, a board-certified neurosurgeon, conducted an IME of Carter on March 2, 2022. Dr. Grain concluded that Carter "sustained a soft tissue injury in the form of cervical and lumbar sprain" as a result of the accident and that she "clearly had a preexisting lumbar and cervical degenerative condition." ECF No. 18-21 at PageID 330. Dr. Grain opined that her sprains should have resolved within two to three months. *Id.* With regard to her imaging studies after the accident, "no traumatic injuries were noted on any of the studies, only degenerative findings." *Id.* Dr. Grain also

found "no relationship between the development of [Carter's] stroke and the motor vehicle accident on January 30, 2019." *Id.* at PageID 333.

Carter underwent a fourth IME on March 15, 2022, with Dr. Anthony Emmer, a board-certified specialist in neurology. ECF No. 18-20. Dr. Emmer concluded that the "imaging reports do not reflect a closed-head injury" and "the motor vehicle accident was not the cause of the stroke." *Id.* at PageID 322-23.

Carter sought personal injury protection benefits from her insurance carrier, Progressive Insurance Company, but her claim was denied. Progressive rescinded Carter's policy because of a material misrepresentation in her application. ECF No. 18-23. Although Plaintiff used her van for her medical transport business, the application did not disclose that the van was being used for hire. The policy rescission was upheld in state court. ECF No. 18-25.

Carter filed this third-party suit against the United States on July 7, 2020, alleging that Dillon was negligent and caused her to suffer serious and disabling injuries. The United States seeks summary judgment pursuant to Federal Rule of Civil Procedure 56.

## LAW AND ANALYSIS

### I.  Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. *Anderson*, 477 U.S. at 252.

### II.  No-Fault Act Requirements

Carter's claim arises under the Federal Tort Claims Act. The act waives sovereign immunity and renders "the Government liable in tort as a private individual would be under like circumstances." *Premo v. United*

*States*, 599 F.3d 540, 544 (6th Cir. 2010) (citation omitted). The liability of the United States in tort "is usually determined by referencing state law." *Premo* , 599 F.3d at 545 (citation omitted). Here, Carter seeks non-economic damages under the Michigan No-Fault Act, M.C.L. § 500.3135 *et seq.*, a statutory scheme that limits tort liability for automobile accidents.

### A. Effect of Policy Rescission

Under Michigan law, a party who is uninsured at the time of the accident may not recover personal injury protection benefits or non-economic damages from a third party. M.C.L. § 500.3113; M.C.L. § 500.3135(2)(c). Defendant argues that, because Carter's policy was rescinded, she was uninsured and M.C.L. § 3135(2)(c) bars her recovery. *See McCarty v. Akins*, 2021 WL 220780, at *5 (Mich. App. Jan. 21, 2021), *app. denied*, 961 N.W.2d 760 (Mich. 2021) (holding that rescission of policy rendered the plaintiff uninsured at the time of accident and barred recovery of third-party, non-economic damages). However, the Michigan Court of Appeals is split on this issue, with other panels holding that a policy rescission does not bar recovery of third-party, non-economic damages. *See Wilmore-Moody v. Zakir*, 2021 WL 1837852, at *9 (Mich. App. May 6, 2021). This issue is before the Michigan Supreme Court on an application for leave to appeal in *Zakir*. *See* 509 Mich. 881 (2022). Rather than wade

into this unsettled area of Michigan law, the court will rest its decision on other grounds, which it finds to be dispositive.

### B. Causal Nexus between Impairments and Accident

An injured party may recover non-economic losses under the No-Fault Act only when she "has suffered death, serious impairment of body function, or permanent serious disfigurement" that was "caused by [the] ownership, maintenance, or use of a motor vehicle." M.C.L. § 500.3135(1). A "serious impairment of body function" means "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." M.C.L. § 500.3135(5); *McCormick v. Carrier*, 487 Mich. 180 (2010). The plaintiff must demonstrate that the impairment was caused by the motor vehicle accident. *See* M.C.L. § 500.3135(1); *Lopez-Garcia v. United States*, 207 F. Supp.3d 753, 758-59 (E.D. Mich. 2016) (a plaintiff must "demonstrate a causal relationship between his injury and the accident") *Gurley v. Gartha*, 2022 WL 128121, at *5 (Mich. App. Jan. 13, 2022).

Plaintiff states that following the collision, she was in pain and had difficulty bending, reaching, and lifting. ECF No. 19 at PageID 369. She also associates her stroke and subsequent impairments with the car accident. *Id.* Plaintiff has failed, however, to present evidence linking her

-10-

impairments with the accident. "That a condition temporally follows an event is not in itself evidence of causation." *Mehdi v. Gardner*, 2015 WL 1227710, at *2 (Mich. App. Mar. 17, 2015). Indeed, the evidence in the record is contrary to Plaintiff's claim.

Following the accident, CT scans were negative for acute findings, and Carter received conservative treatment. Two independent medical examiners opined that her back, neck, and shoulder problems were due to a pre-existing degenerative condition, not the accident. Plaintiff has not presented countervailing evidence in this regard. Additionally, as of three weeks after the accident, Carter stated that she was "very active" and "had no problems at all." ECF No. 18-4 at PageID 175.

Although Plaintiff speculates that her stroke was caused by the accident, she has not presented expert testimony in support of this theory. Rather, three independent examiners have opined that her stroke was not caused by the accident. In the absence of countervailing evidence, Plaintiff has not established a genuine issue of material fact with respect to causation. Without evidence creating a causal nexus between her impairments and the accident, Plaintiff cannot recover under the No-Fault Act. *See, e.g., Lopez-Garcia*, 207 F. Supp. 3d at 759 ("[W]ithout any countervailing evidence establishing a causal relationship between Garcia's

injuries and the accident, there is nothing for the finder of fact to consider."); *Davis v. Nationwide Prop. & Cas. Ins. Co.*, 2021 WL 5750624, at *4 (Mich. App. Dec. 2, 2021) ("Merely because plaintiff asserts that the impairments occurred 'after' the accident does not establish that they were 'caused by' the accident."); *Mehdi*, 2015 WL 1227710, at *2 (Mich. App. Mar. 17, 2015); *Bayley v. United States*, 2018 WL 4901153, at *6 (E.D. Mich. Oct. 9, 2018); *Kittle v. United States*, 2021 WL 5741289, at *8 (E.D. Mich. Dec. 2, 2021).

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for summary judgment (ECF No. 18) is GRANTED.

Dated: January 24, 2023

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 24, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk